Good morning, Your Honors. David Zucman on behalf of Mr. Sanchez. Your Honors, from the beginning, I want to make it clear that I am in favor of sarcasm. I think it's good to have invective. I think that it makes arguments more interesting. Are you talking about me? Well, we're going to get to that. But it's really, Mr. Carguello is a fine orator. He's a very good attorney. But it's just you can't go to the position of saying that an acquittal would help drug trafficking organizations. I mean, it's just I understand where the argument, what the genesis of it is. But it's not a fair argument because it invites the jury to make its decision based on something other than whether there's proof beyond a reasonable doubt. Now, obviously, this is plain error. And I think that the first question is obvious. The argument should not have been made. From that, I think, flows the question of whether the district court should have corrected it. And I think the district court should have. There was no correction. And this dovetails into- Does it matter, given particularly that it's in plain error, that while your way of reading it may be a fair way of reading it, another way of reading it was simply as a very emphatic way of saying this guy's lying? And I think that would have been a fair thing to say. I think the government- But in terms of plain error, whether the district court had to step in when there was no objection, if you have at least an arguably ambiguous statement- It doesn't seem ambiguous to me to say that, to send a memo to drug trafficking organizations, invites the jury to consider what effect an acquittal would have on- You opened up your comments appropriately, so, with what was a statement that on the transcript, they'll be interested to see whether your sense of humor that you confated with comes across in the transcript. And I'm not criticizing you. My point is, following on what Judge Berzant says, if one reads the words, and just reads the words, I would agree with you that it's very, very, if not over the line, close to the line, about asking the jury to send a message by convicting them regardless. On the other hand, if there was a sarcastic tone of voice, the judge is the one who's going to be able to assess that. And I have no idea, sitting here today, whether- Is this Judge Lorenz? Yes. Whether Judge Lorenz, who had just admonished, I think, on a prior, immediately prior objection, that arguments of counsel are not evidence, would have said something had it been called out with an objection. Now, I have not done criminal cases. I know that in the course of arguments, sort of you don't interrupt your opponent's arguments. Noteworthy, however, that that doesn't seem to be the constraint operating here. So, defense counsel having injected an objection already, and then the judge saying arguments of counsel are not evidence, then the prosecutor says what he said. Now, I give you the fact that it's the last thing the jury said. But what troubles me is that we don't know, sitting here, what the three-dimensional aspect of those comments were. We get a one-dimensional aspect. So how do we deal with that? You weren't the trial counsel, the defense counsel, correct? That's correct, Your Honor. I don't know that there's any hard and fast test I can give you for determining whether a tone of voice is sarcastic. I mean, that seems to be ultimately in the ear of the beholder, perhaps the eye as well. And I have no reason to believe that Mr. Arguello struck a particularly sarcastic tone. The government is recasting the argument as being, well, this is sarcasm and indignation. Nothing wrong with sarcasm and indignation. You can use that all day long. What you can't do is say that there's a broader law enforcement concern that would be impeded by acquitting Mr. Sanchez. And it's just an impermissible argument. Now, you can say, well, it's not a big deal in this case because Mr. Sanchez's defense wasn't very good. And he essentially, what he did confess, he ran a duress defense. He admitted knowledge. So in some sense, the evidence is more than overwhelming. There's a full-on confession. But on the other hand, he also ran his duress defense, which, you know, the sufficiency test is soft for the goose and it's soft for the gander. It only requires that there be evidence in the record from which a jury could find in Mr. Sanchez's favor. And if there was a juror who was thinking, well, if I acquit this man, what's this going to mean for the broader law enforcement concern in stopping these terrible drug trafficking organizations? That's illegitimate. And it seems obvious that had Mr. Sanchez been allowed to rebuttal and address that point, there'd be no issue before Your Honor. Let me ask you this. Sure. I mean, I thought what the prosecutor said was way out of bounds, way out of bounds. Now, you weren't the defense attorney. Your case on duress, your client testified and your client was cross-examined. And the judge instructed on duress. And the government argued first. Right? You asked for a surrebuttal, but that was denied. To be completely clear about the sequence, surrebuttal was requested before the arguments. I know it was. And when you argued, okay, so the government argued and then you came on. And then there was rebuttal. And your client, for all intents and purposes, conceded that all of the elements of the basic crime. And just in essence, what was your argument? Well, Mr. Sanchez testified that he was approached by the smugglers and threatened that he and his family would come to great harm if he refused to cross the drugs. And he testified that he believed he was in mortal danger. The government's argument focused, of course, on the duress instruction with respect to the immediacy of the threat and with respect to the reasonable opportunity to escape. However, the law is that so long as the jury could find this paper, like sometimes you could imagine someone being so scared in a duress case that they couldn't properly explain themselves. And even though the transcript didn't have the correct words in it, the jury could look at that person and say, hey, that guy was really operating under duress. And the burden was on you. Yes, it was. To prove duress by a preponderance of the evidence. Yes, it was. And now, when we had the rebuttal, was a rebuttal directed or part of it directed to arguing the evidence in the case as far as your client's testimony? Yeah, I mean, there's certainly one interpretation of the government's remarks is that my client's story was laughable, risible, was not worthy of belief. It's just and I think the government is fully entitled to make that argument, just not in this particular way. So, you know, it's it's clear that if the government could go back, they would take that point back. They would not make that argument. Then when the prosecutor made the argument about, you know, what was going to happen, the floodgates would open, all the drugs would come into the United States. What did the judge say at that time? Well, there was no objection. So it just went that was the last point. And then we went into jury instructions. Well, did the judge kind of cut him off short? That was not my reading. I wasn't there. That's not how I read the transcript. What's the transcript say about that? There's no indication in the transcript that there was any interjection. That's correct. Other than the court says, OK, all right, ladies and gentlemen, we have concluded. Yeah, well, I read that to mean OK, all right. And, you know, you shut your mouth off and let's get going. And then he makes a few remarks about the arguments of counsel and not evidence. I mean, I have great respect for Judge Lorenz. And one of my favorite things about Judge Lorenz is that he lets the lawyers try their cases. He's not the sort of judge who tends to cut you off. So, I mean, I did. When I read that, I thought that was just a natural transition into instructions. I didn't read that as a rebuke. So I'm already over time, though, so. Just one question. It seems to me that there is some tension between your sur rebuttal argument, i.e., that you should have had sur rebuttal and that would have cured it, and the fact that there was no objection. Because, essentially, you could have had at least that part of your sur rebuttal by saying I object, this statement is improper, and there would have been an instruction. That would have been a very wise objection to make, I think. But it's not only that. It's that by making the sur rebuttal argument, you're essentially saying this could have been counteracted. And only you didn't have one way to counteract it. You had another way to counteract it. Yes. Well, I think that if the judge had interjected and given a curative instruction, this Court wouldn't have put this matter on for argument. I mean, there are many ways this error could have been cured, but the harmless error is I think the problem is in a way it wasn't a wise objection to make, because you're now arguing for a reversal and a new trial, which you wouldn't have gotten had you made the objection. So there are incentives to not make the objection, and that's a problem for us. Yeah. I mean, sitting on your hands, I guess, you could be thinking that you're trying to sneak one to the court of appeals, but if anyone is familiar with the percentage of affirmance at the court of appeals, they would realize the folly of that strategy. Yeah, but when you're a defense attorney and you've made your argument, you probably owe the adrenaline's flowing, or maybe they don't have adrenaline down there. And you think, well, yeah, I'm in pretty good shape. And judges don't like objections, and so I'll just sit tight and I think I'm in good shape. My client did testify. Was he impeached? Yes, extensively. He had a prior conviction. He had flies at primary, et cetera. Yeah, but I mean not on that. I mean, sure, he had a prior conviction and he had primary before, but I mean, was he caught in a lie? Well, our view of the evidence is that no, he was not, that he was acting under duress at the time at primary, which explains his lies, and that he gave a complete and competent explanation when he testified. Well, are you telling me he lied to the court? No, no, no, no. That's what I just thought I heard you say. No, no, no. I meant that Mr. Sanchez admitted that when he was on the stand, he admitted that he'd been untruthful with the agents. He admitted that he had not explained the fundaments of his duress defense. So that's what I meant. He did not, at no point did Mr. Sanchez perjure himself. Well, where was he untruthful with the agents? Well, I mean, they asked him what his purpose was. He said that he was going to be paid $700 to import the drugs, so that was inconsistent with the duress defense. So our explanation for that, of course, was that he was in great fear at that time. It was immediate after this traumatic experience. So, I mean, I put my hat on. It's really, could the jury find it in his favor? Once we have an acceptable defense, the only question is, was it harmed by the argument? I think it was. Thank you, Your Honor. Thank you. Well, how was it harmed? Because it invited the jury to consider something separate and apart than whether the government had proved its case beyond a reasonable doubt and whether Mr. Sanchez had met his burden by preponderance.  Impermissible. Thanks, Your Honor. Good morning to the court. Carlos Arguello on behalf of the United States, the appellee. Well, Carlos, let me ask you something. Yes, Your Honor. You really sandbagged the defendant here, didn't you? No. You knew there was going to be no serve rebuttal. The judge made that clear. What this was... Is that right? You knew there was not going to be serve rebuttal. Yes, at the beginning of... You knew that. You knew that. And you knew there was going to be duress as a defense. You knew that right at the beginning. Correct, Your Honor. Okay. So you could have covered those in your initial argument to the jury. Did you cover that? Did you take up the duress defense? Yes, but I hadn't responded to defense closing because, of course, that was just made right before the government's rebuttal. Well... So what was it in the defense you responded to by invoking... What were you rebutting? Yeah. What were you rebutting? Let me read the statement. And... I mean, you told the jury. I got... I'll find the exact words. Do you have your words there? I do, Your Honor. Read them to us. It would be better if you... Can I put it into context? Read it directly? No, just read it to me. Starting from which part? The part where you got into this whole business. Because it's not... About, you know, what an acquittal would do. I never mentioned what an acquittal would do, Your Honor. What'd you say? What I said at the beginning was, folks, if it quacks like a duck... Yeah, read that. If it quacks like a duck... Read that. I said, then guess what? Read that. I said, in this case, all the evidence shows was that he was a willing participant. Because when you see what the defendant's trying to do with the stories, he's trying to rewrite history. He's trying to rewrite history in the face of all that has been brought to your attention. Much is being made about that he didn't say a word at the beginning of the primary. He didn't have to say, look, they intimidated me or threatened me, or give a dissertation on the jurisdictions, because the argument was made here. Yeah, I just asked you to read it. Okay. There are a number of words with five letters or less that can convey the same thing. He could have said, hurt me, they're going to hurt me, they're going to kill me, shoot me, hit me. But didn't he say at the very beginning, I'm afraid? To the post-morandum to the case agent. Right. Didn't he say things about he was worried about his family? I mean, he said things that were indirect, but he did say some things at that point, several, as I recall. Right. He sort of overstated it, too. I mean, he did say some things. Right, and what he was saying at that time, too, was he was asking Agent Henderson, how can I help myself? He said, can you help me? Right, and it was done in the context. He said, can you help me? That's what he said. Right, but he was saying it as in, how can you help me get less time? It wasn't, can you help me and my family? Because he said, call your family. He said, no. But it was more like, can you help me? I'm in a lot of trouble. Did he say that? I'm in a lot of trouble? No, but that was the context. He said, can you help me? Yes. Okay. As in, how can I get less time? How can you help me? Well, where did the as is come from? I'm sorry? Where are you getting the as is from? You're just saying as is, but why as is? Oh, that was from the cross exam of the, or the direct of Agent Henderson in the transcript. Well, that's what he surmised, but the words were, can you help me, right? In the context of you're being arrested for importation of cocaine or methadone. Didn't he say something about being worried about his family? Right. But he wasn't saying because of that. Well, he just didn't get it all out. But, I mean, at least that would be one thing the jury could think. There was not nothing there. There was something from which one could say that he was, maybe somebody could think reading this that there was some, it wasn't inconsistent with his story. There was a scintilla. All right. There was some suggestion. There was enough for the judge to allow a duress defense to go to the jury. I disagree, Your Honor, because we argued against the duress instruction. Yeah, but the judge allowed it. The judge allowed it. Exactly. I said there was enough for the judge in your case to allow it to go to the jury. You may have disagreed with it, but it was going to the jury. Exactly. You could have argued somewhere else, but the jury, you lost on the argument that there was not even a scintilla. Correct, Your Honor. Okay, so under that posture, going through your argument, you were making the points to attack what he said. You did all of that. And then you come down to, because according to the defense arguments, there are these great reasons why he couldn't say it at primary. But if that is the case, why don't we send a memo to all drug traffickers, to all persons south of the border, and in Imperial County and in California, why not our nation? While we're at it, send a memo to them and say, dear drug traffickers, when you hire someone to drive a load, tell them that they were forced to do it. Because even if they don't say it at primary and secondary, they'll get away with it if they just say their family was threatened because they don't trust Mexican police and they don't think that the U.S. authorities can help them. Why don't we do that? That's not a comment on the evidence. That is not a comment on the statements of the defendant. That is a statement that this kind of defense, which you apparently thought shouldn't have gone to the jury, is basically going to open the door to anybody coming in and arguing that they were under duress. That is an improper argument. That's asking the jury to convict, to send a message, or to avoid sending a message. Isn't it? On reflection, that's not a good argument. On reflection, because I'm here before the Ninth Circuit Court of Appeals. Your reflection, not reflection because you're here in front of us. You should reflect on it. I would hope so. Well, absolutely. But the thing is, what can't be forgotten, Your Honor, is the tone, my demeanor, the delivery in which it was made. I don't really understand that point in either direction. I mean, that is, I don't see why it matters if it was sarcastic, and I don't see why it matters if it wasn't sarcastic. Because the level of how offensive it was. You represent the government of the United States. Yes, Your Honor. You say, I'm speaking for the government. So you've got to uphold high standards. You understand that, don't you? Absolutely, Your Honor. You know, you're speaking for the United States of America. See if I can explain what I'm saying, or have you answered the question I was trying to ask? Yes, Your Honor. The question isn't whether you were offensive, which is the way you briefed it as well. The question is whether you were making an impermissible, substantive argument. And I guess I need the answer to that, and why the tone in either direction has anything to do with that. I bring that up, Your Honor, because the person's best, in the best position to make an objection or to interject were defense counsel and the court. And defense counsel, I've tried cases with her before. I've been in the Senate district for years. I think we know each other's styles. And the way it was said, perhaps with a smile. You do have a good smile and dimples. That's what I'm trying to concentrate on. I'm having a hard time understanding. I mean, there are instances in which the tone would matter. Right. But why does, if we're taking offensiveness off the table, we're saying it isn't that this was offensive. The problem is, was it simply a substantively impermissible argument? And why does the tone matter as to that? Or anything that we can't see on the page? Because, Your Honor, is it less apt to influence the jury when you're delivering it in that tone? And I'm sorry, to what extent will it influence the jury? Because one thing, too, Your Honor, in this situation, it's not like the other cases that clearly have been decried as offensive. Because the jury could have understood you as not saying that they should take into account the impact on other cases and on direct enforcement in general, if you said it one way rather than another way. But we're not telling them. We don't want them to send a memo. Of course you don't. We didn't realistically ask them to send a memo. That's right. That's exactly right. But how about, let's just, I mean, it's perfect. One, I understand this to mean, and I understand that a jury would understand this to mean, however you said it. Right. That they should take into account in making their decision that if they buy his duress story, there are many more of such duress defenses going to be made, and that that will undermine the enforcement of the drug laws. Is that not what you meant? No. It should be interpreted that way, Your Honor. But what's the memo? What is the memo that you're talking about? It is a sarcastic response. No, what's the memo? Forget tone. You're not the witness here. You're not under oath. You don't probably remember your facial expressions. I don't know how you would because you weren't even observing them. Who knows? Okay. So the question is on the substance, the memo is a communique. Okay. How is the jury going to send a memo? It was going to send a memo by their verdict. And the verdict, you're telling them, if they bought the duress defense, a statement that would influence future conduct by drug dealers, witnesses in court, law enforcement. That's what a memo is. You think you were telling them not to send a memo. That's what you just said to us. Okay. The memo was their verdict. Okay. And they should not be rendering a verdict that is going to be viewed by them as a memo. Otherwise, juries are going to sit in the jury room and decide whether or not the consequence of their verdict is going to send a memo. How many jurors after O.J. Simpson must have thought, gee, you know, if we acquit or convict in this, are we going to cause a riot? That's the very kind of thing we can't have in the jury room. the notion that they are not going to exercise their reasonable doubt because even though they may think that there's reasonable doubt, if they exercise that one vote that they have, it will be misunderstood as a memo to other people. That's the substance of what was said, whether it was said with or without sarcasm. That's the problem. Understood you. And I'm out of time, but I would like as a closing remark. We like to hear you. This was after days of... Arturo, did you have a good case here? Did I have a good case in Arturo's case? I think so. Yeah. So why'd you have to get into all of this? I mean, it seems to me when you do something like that, you're really worried. I'm going to lose this case. I've got to do something to inflame the passions, fears, and vulnerabilities of the jury. Or are you just doing it to have a good time, to be a clown in the courtroom? I mean, I can tell you've got a great personality. Thank you. Some of the greatest lawyers I know, the most successful one, I would attribute 95% of their success to their dimples and their smile. You know, they're good. They make a lot of money, too. Because juries like dimples. They like smiles. And, you know, I mean, it's hard for me to get mad at you. I'll have to remember when I get my next acquittals, Your Honor. In this, though, Your Honor, I clearly understand what the court's conveying and the inappropriateness. I think, unfortunately, as a trial attorney, you don't have your rebuttal outlined or written out because it's rebuttal. No, I understand all that. We know that. And that's why the principles are important, so that your instincts of the emotion of the argument that Judge Pragerson is referring to don't overcome the standard. Because you are the U.S. attorney. You are the government. And therefore, not only do you go last, you also have the force and the presumption of the authority of the government behind you. So you have a special governor that kicks in or should, so that when you're on the fly, we all understand that we've been in trials. It's something that's not going to repeat itself. But just to remind the court two points. Shouldn't we send a message to all the lawyers? I think I've already sent that message already. To the ADA? To the world? You know. But I think the court's being sarcastic. What? You said the court being sarcastic? Well, I still haven't gotten the answer to my question. I'm sorry. Well, it is really how the – to be more specific. You have been trying to argue against the plain error doctrine on the notion that the tone and the way this was delivered would have influenced one's view of it. And so, therefore, it's particularly important that an objection be raised. That's essentially what I've been saying. And if one doesn't think the tone or the sarcasm has anything to do with the problem here, no matter how sarcastic it was or wasn't or objectionable or offensive in tone, it's not the point. Then the question is, why doesn't the plain error doctrine apply here and require a reversal? As a starting point, it's one paragraph at the very end of the trial compared to all the elements were met in this case over days of evidence, over witnesses. The defendant testified. He went through direct. He went through cross. The jury got an opportunity to observe his demeanor. And they rendered their verdict in a little bit over an hour. That's because basically what you're saying is that the last thing they heard could well have had the impact. And that's the – that's what you – usually one winds up as the last word with the point that you most want them to take away with them. Point well taken, Your Honor. But I think sometimes we don't give jurors enough credit. Well. It seems like we sometimes think that they're – Well, you didn't give the jurors enough credit. You know. You know, you were trying to inflame them, get them all excited, you know, help save the world. You don't give them enough credit. I mean, you thought you had a real good case. Why do you muck it up with this? I mean, you know, that goes on all the time. And we've sent message after message after message, you know. But the difference in this case, Your Honor, from the other cases the court has held to substantially affect the verdict is we weren't asking the jury to be proactive. We didn't say send a message to the crooks or tell the police what a great job they did, tell the community that they can be safe, societal factors, emotions. It was – I think that these witnesses were telling the truth. The police have nothing to lose. I wouldn't put that witness on the stand if I thought he was lying. Tell the community we're not going to tolerate this. Take these guns off the street. Okay. All right. Thank you. You have been helpful anyway, so have a seat. And I'll end it. Okay. Thanks, Your Honor. See, you probably ought to be a defense attorney. He ought to be a prosecutor. I think you're – appreciate the arguments on both sides. Thank you. Thank you. The arguments were good. They were so great. We'll send a message out. Thank you.
judges: Pregerson, Fisher, Berzon